Khosrow B. AFSHAR, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.

No. 82–1457.

District of Columbia Court of Appeals.

Submitted Jan. 26, 1984.

Decided Jan. 24, 1986.

Bernard A. Gray, Sr., Washington, D.C., was on brief for petitioner.

Inez Smith Reid, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., were on brief for respondent.

Before FERREN and TERRY, Associate Judges, and REILLY, Senior Judge.

TERRY, Associate Judge:

Petitioner's tenants filed a complaint with the Rental Accommodations Office (RAO) alleging that their rents exceeded the applicable rent ceilings. The Rent Administrator determined, after a hearing, that petitioner had charged rents in excess of the ceilings from August 1980 through May 1981, but found that he had become aware of the applicable ceilings only in November 1980. The Rent Administrator therefore ordered petitioner to refund to his tenants the excess rents collected from December 1980 through April 1981. On the tenants' appeal, the Rental Housing Commission held petitioner liable for treble the entire amount by which he was found to have overcharged his tenants. Petitioner then sought review in this court. Because we conclude that the rents which petitioner charged did not exceed the rent ceilings, we reverse the Commission's decision.

I

In August 1978, almost two years before petitioner Afshar purchased the apartment building involved in this case, the Rent

Administrator in *HP # 2085* granted a substantial rent-ceiling increase to its owner. The Administrator's order, however, conditioned any actual increase in rent on a certification by the Department of Housing that the building was in substantial compliance with applicable housing regulations. No such certification was ever made, and thus the rents remained unchanged.

When Afshar bought the building on July 30, 1980, he was unaware that already pending before the RAO was a complaint by the tenants alleging violations of housing regulations and a substantial reduction in services by the former owner. Nine days later, on August 8, the Rent Administrator issued a decision in that case, *TP # 3803*, finding violations of housing regulations, and ordering the building's rent ceilings lowered by seven dollars per unit. Because Afshar had failed to file an amended registration statement as required by D.C.Code § 45–1686(e) (1980 Supp.),[1] he did not receive a copy of the order.

In November 1980 Afshar's tenants filed a new complaint with the RAO, claiming among other things that their rents exceeded the applicable rent ceilings, as adjusted by the order in *TP # 3803*. The Rent Administrator ruled that from August 1980 through April 1981, the rents for all but one of the rental units were seven dollars above their respective ceilings. However, the Administrator also found that Afshar had no knowledge of *TP # 3803*, and thus of the applicable ceilings, until the tenants filed their complaint against him more than three months after the seven-dollar reductions had been ordered. Ruling that she could not hold Afshar liable for overcharges of which he was unaware, she ordered a refund of only the overcharges from December 1980 through April 1981, a total of thirty-five dollars per unit. In addition, she declined to treble the refunds, citing "the unusual circumstances in this case."[2]

The tenants appealed to the Commission, which reversed the Rent Administrator's refusal to hold petitioner liable for overcharges made before December 1980, and also held that she was required by the 1977 Act to treble any refund she ordered. Accordingly, the Commission ruled that the tenants were entitled to $189 per unit, three times nine months' overcharges of seven dollars.[3] Afshar seeks review of this decision.

Afshar contends that the rents which he charged did not exceed the applicable rent ceilings, and that the Commission therefore could not impose any liability whatever

---

**1.** Section 45–1686(e) was part of the Rental Housing Act of 1977 ("the 1977 Act"), D.C.Law 2–54, 24 D.C.Reg. 5334, D.C.Code §§ 45–1681 through 45–1699.27 (1980 Supp.). The 1977 Act expired on April 30, 1981, and was superseded by the Rental Housing Act of 1980 ("the 1980 Act"), D.C.Law 3–131, 28 D.C.Reg. 326, D.C.Code §§ 45–1501 through 45–1597 (1981). The 1980 Act became law on March 4, 1981, but it did not take effect until May 1, upon the expiration of the 1977 Act. *See* D.C.Code § 45–1596(a) (1985 Supp.).

Because the tenant petition giving rise to this case was filed under the 1977 Act, it is governed by the provisions of that Act. *See* D.C.Code § 45–1594 (1981). The 1980 Act, however, contains many similar provisions. Indeed, we have recently held that "[b]ecause the 1980 Act was a continuation of, rather than a substitute for, the 1977 Act, [a tenant] had the right to file a complaint under the former for relief from alleged violations of the latter, subject only to the procedural requirements of the 1980 Act." *Feld-*

*man v. District of Columbia Rental Housing Commission,* No. 501 A.2d 781, 786 (D.C.1985). *See also Strand v. Frenkel,* 500 A.2d 1368, 1370–1372 (D.C.1985) (tenant may sue under 1980 Act to enforce Rent Administrator's award of damages under 1975 Act).

**2.** The Rent Administrator also rejected the tenants' assertions that the building was still not in substantial compliance with the District's housing regulations, that Afshar had substantially reduced services, and that Afshar had retaliated against them. She did find, however, that Afshar had not yet obtained a 1982 housing business license and had failed to register his property with the RAO, as required by D.C.Code § 45–1516(d) (1981). She ruled that he could not raise his rents until he satisfied these requirements.

**3.** The Commission did affirm the Rent Administrator's finding that the building was in substantial compliance with the housing regulations.

upon him. Alternatively, he asserts that the Commission erred in modifying the Rent Administrator's award; the 1977 Act, he argues, neither renders him liable for unknowing overcharges nor requires the trebling of all refunded overcharges. We agree with the first argument, and thus we do not address the second.

## II

Our review of the Commission's decision is governed by the District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1501 through 1–1510 (1981 & 1985 Supp.). Section 1–1510(a)(3) authorizes us to "hold unlawful and set aside" any agency action, findings, or conclusions which we determine to be

(A) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege, or immunity;

(C) In excess of statutory jurisdiction, authority, or limitations or short of statutory jurisdiction, authority, or limitations or short of statutory rights;

(D) Without observance of procedure required by law, including any applicable procedure provided by this subchapter; or

(E) Unsupported by substantial evidence in the record of the proceedings before the Court.

Similar language in the 1977 Act guides the Commission's review of the Rent Administrator's decision:

The Commission may reverse, in whole or in part, any decision ... which it finds to be arbitrary, capricious, an abuse of discretion, not in accordance with the provisions of this subchapter, or unsupported by substantial evidence in the record of the proceedings before the Rent Administrator or his or her designee; or it may affirm, in whole or in part, the Rent Administrator's or his or her designee's decision.

D.C.Code § 45–1695(g) (1980 Supp.).[4] We hold that the Rent Administrator erred in ruling that the rents charged by Mr. Afshar exceeded the applicable rent ceilings, and that the Commission erred in failing to reverse that ruling on the ground that it was "not in accordance with the provisions of" the 1977 Act.

It is important in this case to recognize the difference between the rent actually paid for an apartment and the rent ceiling established for that apartment. Under the 1977 Act, "no landlord of any rental unit subject to this subchapter may charge or collect rent for such rental unit in excess of [the applicable rent ceiling]." D.C.Code § 45–1687(a) (1980 Supp.). The rent ceiling is computed initially by adding to the "base rent" (the "rent legally charged or chargeable on October 31, 1977," D.C.Code § 45–1681(a) (1980 Supp.)) a percentage of that rent, which varies according to the number of services the rent covers. D.C.Code § 45–1687(a) (1980 Supp.). It can be altered later to reflect changed circumstances. On the landlord's petition, the RAO may allow an increase in a rent ceiling under D.C.Code § 45–1688 (1980 Supp.) for any of four reasons: to allow the landlord to recover the cost of capital improvements (D.C.Code § 45–1691 (1980 Supp.)); to include the cost of an increase in services or facilities provided (D.C.Code § 45–1692 (1980 Supp.)); to "generate ... a rate of return" of not more than eight percent (a "hardship petition," D.C.Code § 45–1693 (1980 Supp.)); and to compensate for a vacancy in the unit, when the tenant either moves out voluntarily or is evicted for certain specified reasons, including non-payment of rent (D.C.Code § 45–1694 (1980 Supp.)). The Commission may also adjust rent ceilings throughout the District of Columbia once a year to reflect changes in the Consumer Price Index. D.C.Code § 45–1687(b) (1980 Supp.).[5]

---

**4.** Virtually identical language appears in the 1980 Act. *See* D.C.Code § 45–1527(g) (1981).

**5.** Corresponding provisions appear in the 1980 Act. *See* D.C.Code §§ 45–1503(2), 45–1517, 45–1518, 45–1521 through 45–1524 (1981).

Not all adjustments of a rent ceiling need be upward, however. The rent ceiling may be raised upon a finding of a substantial increase in services or facilities provided, but it may be lowered if those services or facilities are found to have been substantially decreased. D.C.Code § 45–1692 (1980 Supp.). A tenant whose services are cut back may petition the RAO for a corresponding decrease in the rent ceiling. D.C. Code § 45–1695(a) (1980 Supp.). The rent ceiling for a particular unit can thus reflect any significant changes in its condition. Nevertheless, the ceiling does not dictate what the rent itself shall be; it only imposes a limit upon the landlord's bargaining power.

The 1977 Act states that any person who "demands or receives any rent for a rental unit" in excess of that unit's rent ceiling, or "substantially reduces or eliminates related services previously provided," shall be liable for "treble the amount by which the rent exceeds the applicable rent ceiling or for seventy-five dollars ($75.00), whichever is greater, and/or for a rollback of the rent to such amount as the Rent Administrator or Commission shall determine." D.C.Code § 45–1699.24(a) (1980 Supp.). Thus a landlord who even demands rent in excess of the established ceiling will be liable for either treble the excess (at least $75.00 in any case), a rollback of the rent, or both. The same penalties apply to a landlord who substantially cuts back or eliminates services to his tenants; but unless the rent actually charged exceeds the rent ceiling, he would be liable at most for $75.00, and the rent would be subject to a rollback. However, since a substantial reduction in services is also a ground for a reduction in the rent ceiling, D.C.Code § 45–1692 (1980 Supp.), which may be made retroactive to the date of the reduction in services, it can retroactively trigger treble-damage liability. See *Delwin Realty Co. v. District of Columbia Housing Commission*, 458 A.2d 58 (D.C.1983).

■ The other available sanction for a rent-ceiling violation, a rollback of the rent, is a mysterious creature. Nowhere does the 1977 Act define a rollback or discuss its effect. It appears, however, to be an equitable measure akin to the reformation of a contract. Whereas an adjustment in the rent ceiling changes the maximum amount for which the landlord may lease his unit, a rollback directly affects the terms of the existing lease. It alters the amount of rent on which the landlord and the tenant have already agreed, but it does not limit the range of possible rents that may be collected for the unit at some time in the future; in other words, a rollback has no effect on the rent ceiling. When a landlord charges rent in excess of the applicable ceiling, the treble damages provision of section 45–1699.24(a) penalizes him, but it is the rollback provision which allows the RAO or the Commission to modify the lease to conform to the ceiling. If the landlord cuts back or eliminates services without triggering a rent-ceiling reduction, a rollback serves to bring the rent into line with the services the landlord actually provides.

Our understanding of a rollback as affecting only the rent, and not the rent ceiling, is bolstered by the other section of the 1977 Act which authorizes a rollback. D.C.Code § 45–1689(a)(2) (1980 Supp.) states:

> Where the Rent Administrator finds that there have been excessive and prolonged violations of the Housing Regulations affecting the health, safety and security of the tenants or the habitability of the housing accommodation in which such tenants reside and that the landlord has failed to correct such violations, the Rent Administrator may roll back the rents for the affected rental units to an amount which shall not be less than the February 1, 1973 base rent for such rental units until such time as the violations have been abated.[6]

Here, too, the rollback does not limit the extent to which the landlord may one day

---

**6.** The corresponding provision of the 1980 Act is    D.C.Code § 45–1519(a)(2) (1981).

raise the rent; rather, it affects only the rent actually paid. Whatever the ceiling may be, the rollback enforces the terms of the lease and protects the tenant from the landlord's malfeasance or nonfeasance.

### III

Adjustments to rent ceilings and rollbacks of rents, then, are as different as rent ceilings and rents themselves. Where the law authorizes an adjustment in the rent ceiling, it does not necessarily mandate a rollback; where it directs a rollback, it does not also decree a rent-ceiling adjustment. In this case both the Commission and the Rent Administrator erred in failing to recognize the essential differences between these two quite distinct remedies.

The Rent Administrator and the Commission concluded that the monthly rents which Mr. Afshar charged his tenants between August 1980 and April 1981 were seven dollars above the applicable rent ceilings. This conclusion was based upon the finding that Afshar had failed to adjust his rents in accordance with the rent-ceiling reduction ordered in *TP # 3803*. Although that finding was technically correct, it failed to recognize that the reduction of the rent ceiling in *TP # 3803* was invalid because the Rent Administrator was without power under the 1977 Act to lower the ceiling in that case.

In *TP # 3803* the Rent Administrator found violations of the housing regulations in Afshar's building, but she did not find that there had been a substantial decrease in services, as the tenants had claimed. Correctly, she cited a section of the 1977 Act which authorizes a rollback of the rents for the affected rental units— *but not a reduction in the rent ceiling*—upon a finding of "excessive and prolonged violations of the Housing Regulations ... until

such time as the violations have been abated." D.C.Code § 45–1689(a)(2) (1980 Supp.).[7] Where the Rent Administrator went astray in *TP # 3803* was in her conclusion that the rent ceiling should be reduced. Her findings warranted only a rollback, not a rent-ceiling reduction. Because the Rent Administrator had no authority under section 45–1689(a)(2) to lower the rent ceiling for violations of the housing regulations, the seven-dollar reduction in the ceiling which was ordered in *TP # 3803* was null and void; the rent ceiling, as a matter of law, remained where it was. Since the only sanction the Rent Administrator could have imposed was a rollback, and no rollback was ordered, Mr. Afshar was never in violation of the order in *TP # 3803*.[8]

Moreover, even if the Rent Administrator had properly lowered the rent ceilings in *TP # 3803*, the rents charged by Mr. Afshar would not have exceeded the reduced ceilings. Afshar contends that when the RAO in *HP # 2085* conditionally granted the hardship petition of the former owner in August 1978, the rent ceilings increased immediately by 38.47 percent. Although the RAO conditioned implementation of any rent increase upon certification of substantial compliance with District housing regulations, and although that condition was never met, Afshar maintains that the lack of certification had no impact on the rent ceilings, which have remained well above the rents charged. To this end, he cites *HP # 915 & TP # 1357* (March 15, 1979), a decision of the Commission's predecessor, the Rental Accommodations Commission (RAC). In that case a tenant appealed from the Rent Administrator's grant of a hardship petition, conditioned upon substantial compliance with the housing regulations. The RAC rejected the tenant's challenge, distinguishing an increase

---

7. The 1980 Act similarly authorizes a rollback of the rent, but not a reduction in the rent ceiling, for excessive and prolonged violations of the housing regulations. D.C.Code § 45–1519(a)(2) (1981).

8. Even if there had been a rollback in *TP # 3803* and Mr. Afshar had failed to reduce the rents accordingly, he would not be liable for treble damages. That sanction is available only for breaches of the rent ceiling. D.C.Code § 45–1699.24(a) (1980 Supp.).

in the rent from an increase in the rent ceiling. It held that although the 1977 Act prohibits any increase in rent above the base rent so long as substantial violations of housing regulations exist, D.C.Code § 45–1689(a) (1980 Supp.), it does not prohibit an increase in the rent ceiling: "It does not preclude the granting of the increase, only the implementation."

Both the Rent Administrator and the Commission rejected this argument when Mr. Afshar presented it to them in this case. The Rent Administrator concluded that the seven-dollar rent-ceiling reductions ordered in *TP # 3803* should come from the rent ceilings as they stood before the hardship petition was granted in *HP # 2085*. The Commission affirmed this ruling, stating that the rent ceilings could not be raised until the conditions were met.

■ We think the Commission and the Rent Administrator were both in error. The Rent Administrator's August 1978 order in *HP # 2085* states in pertinent part:

It is FURTHER ORDERED, that the rent for each rental unit ... may be increased to an amount which does not exceed 38.47 percent over the current maximum rent ceiling.

Since the rent may never lawfully exceed the rent ceiling, D.C.Code § 45–1687(a) (1980 Supp.), and since the Rent Administrator, in acting on a hardship petition, has the power to increase either the rent or the rent ceiling or both, D.C.Code §§ 45–1688(c), 45–1693 (1980 Supp.), we hold that this order necessarily increased the rent ceilings as well as the rents for all the apartments in Mr. Afshar's building. If *TP # 3803* affected the rent ceilings at all, it only lowered them seven dollars from the level to which the granting of the hardship petition in *HP # 2085* had raised them, still leaving them far above the rents which Afshar was charging.

We therefore reverse the Commission's decision and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*