**A. Bradley ASKIN, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

No. 84–1230.

District of Columbia Court of Appeals.

Argued March 14, 1986.
Decided Feb. 27, 1987.

---

A. Bradley Askin, pro se.

Beverly Burke, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel at the time the brief was filed, John H. Suda, Principal Deputy Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before FERREN, BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Petitioner Askin seeks review of a July 13, 1984, decision and order of the Rental Housing Commission (the "RHC") reversing a July 30, 1980, decision of a Rental Accommodations Office ("RAO") hearing examiner, which approved a voluntary rent increase for petitioner's property. Respondent RHC challenges Askin's petition before this court, claiming that we lack jurisdiction because Askin did not timely file his petition for review with this court. In the alternative, respondent asks that we remand these proceedings for further consideration by RHC. Petitioner, of course, asks us to address the merits. Before discussing any questions relating to the merits, we shall consider the parties' jurisdictional arguments.

### I. *The Facts*

On November 28, 1979, Askin filed a voluntary rent increase agreement with the Rent Administrator of the RAO for property at 2526 17th St. N.W.[1] He filed his agreement pursuant to the Rental Housing Act of 1977 ("1977 Act"), D.C.Code § 45–1689(c) (1980 Supp.), which was then in effect.[2]

On December 10, 1979, an auditor for the Rent Administrator denied the increase; Askin immediately appealed this decision and asked for an expedited hearing. The hearing was held on March 5, 1980. The hearing examiner issued a decision on July 30, 1980, upholding the rent increase agreements and reversing the earlier decision.

---

1. He also filed a voluntary rent increase agreement for 2544 17th St., N.W. This increase was granted and has not been challenged.

2. The Rental Housing Act of 1977, D.C.Law 2–54, 24 D.C.Reg. 5334 (1978), D.C.Code § 45–1681—§ 45–1699.27 (1980 Supp.). The 1977 Act expired in 1981 and was succeeded by the Rental Housing Act of 1980, D.C.Law 3–131, 28 D.C. Reg. 326 (1981), *as amended,* D.C.Code § 45–1501—§ 45–1597 (1981 & 1983 Supp.), since expired.

Under the 1977 Act, which became effective on March 16, 1978, the Rental Accommodations

Commission (the "RAC") was authorized to promulgate rules for the Act's administration and to decide appeals brought to it from decisions of the Rent Administrator. D.C.Code § 45–1683(a) (1980 Supp.). The 1977 Act also provided for the continuation of the RAO as an agency of the D.C.Government, with the Rent Administrator as its head. *Id.,* § 45–1684. The Rent Administrator, in turn, was authorized to carry out the rent stabilization program, including holding hearings on petitions filed under the 1977 Act. *Id.,* § 45–1685(a), (d)(2), and (g)(1).

One of the tenants, Marjorie Goff,[3] appealed the July decision and another hearing date was set.[4] At an October 21, 1980 hearing, the Rental Accommodations Commission (the "RAC") orally affirmed the July 1980 decision. On October 27, 1980, the tenants filed a Motion for Reconsideration and/or Clarification of the oral decision. Based on this motion, a third hearing was scheduled to review the July 1980 decision. It is not clear from the record whether this hearing, scheduled for March 3, 1981, ever occurred; Askin states that it did not. In any event, the RHC[5] issued a Proposed Decision and Order on September 16, 1982, reversing the July 1980 decision. Askin promptly filed objections to the proposed decision and order. On July 13, 1984, the RHC finally rendered a Decision and Order,[6] substantially adopting the earlier proposed decision. The order noted that because the case was filed under the 1977 Act, the provisions of that Act on voluntary agreements controlled.[7] Askin then filed a Petition for Rehearing and Reconsideration on July 31, 1984. On August 30, 1984, the RHC issued a written order denying Askin's petition, stating:

> After having reviewed and considered the petition in its entirety, the Commission sees no need to modify or amend the July 13, 1984 decision.

On September 12, 1984, Askin filed a petition for review with this court.

## II. *Jurisdiction*

■ The essence of the RHC's argument that we lack jurisdiction to consider the merits of Askin's claim is that under a proper reading of our rules and the RHC's rules for reconsideration then in effect,[8]

---

**3.** The persons appealing the July 30 decision are shown on various pleadings as Goff, "the tenants," and the "2526 17th Street Association, Inc." All will hereinafter be referred to as "Goff".

**4.** This petition for review is not in the record, but Askin contends that for the first time in the process, Goff raised the issue of whether the rent increase in the voluntary agreement violated D.C.Code § 45–1689(c) (1980 Supp.) because an increase by a fixed dollar amount did not comply with the statutory requirement of a "specified percentage" increase. This was the issue upon which the RHC ultimately decided against Askin.

**5.** When the Rental Housing Act of 1980, the "1980 Act", superseded D.C.Law 2–54, the RHC replaced the RAC. Other significant effects from this change in laws will be discussed *infra* as required.

**6.** Askin, however, asserts (and the Commission does not deny) that notice of the decision was not placed in the mail to Askin until July 19, 1984. Askin retained a copy of the envelope in which the notice was mailed, which bears that postmark date.

**7.** The 1980 Act contained a savings clause which provided that "a petition filed with the Rent Administrator under the Rental Housing Act of 1977 shall be determined under the provisions of the Rental Housing Act of 1977." D.C.Code § 45–1594 (1981) (since expired).

**8.** Askin contends that the procedural rules of the RAC, promulgated under the 1977 Act, govern the procedural and timing questions before this court. He bases this conclusion largely upon the language in the savings clause set forth in note 7, *supra*. We disagree. As we recently stated in interpreting the savings clause, "the substantive rights of both landlords and tenants under the 1977 Act were intended to, and did, continue in force under the 1980 Act, subject only to procedural changes in the 1980 Act affecting the enforcement of those rights." *Feldman v. D.C. Rental Housing Commission,* 501 A.2d 781, 785–86 (D.C.1985), rehearing en banc granted and opinion vacated, 506 A.2d 1100 (1986), motion of petitioner for voluntary dismissal of petition for review en banc granted, June 11, 1986. *See also Afshar v. D.C. Rental Housing Commission,* 504 A.2d 1105, 1106 n. 1 (D.C.1986). The savings clause, by its terms, refers only to the provisions of the 1977 Act. On the other hand, the 1977 Act, D.C.Code § 45–1683(a)(1) (1979 Supp.), and the 1980 Act, D.C.Code § 45–1513(a)(1) (1981), both empower their respective commissions to issue, amend, and rescind rules and procedures for the administration of the Acts. The very next section of the 1980 Act, § 45–1513(a)(2) (1981), directs the RHC to decide appeals from decisions by the Rent Administrator under the 1977 Act. Therefore, part of the "act" that the RHC must administer is § 45–1513(a)(2) which directs the RHC to hear appeals arising under the 1977 Act. Both Acts place control over procedure in the hands of the commissions, presumably so each commission could flexibly adopt rules which suit its needs.

Accordingly, we find no reason to construe the savings clause in the 1980 Act to include the old procedural rules of the RAC, except perhaps as such rules directly affect the vindication of substantive rights. *See Kew Gardens Joint Venture v. D.C. Housing Rent Commission,* 359 A.2d

the period in which to file an appeal lapsed well before September 12, 1984, the day Askin filed his appeal. First, RHC contends, Askin failed to timely file his motion for reconsideration. This failure had the effect of not tolling the time in which Askin could petition for review in this court, pursuant to D.C.App.R. 15(b) and (c),[9] thereby making Askin's petition untimely and depriving us of jurisdiction. Alternatively, RHC contends that even if the motion for reconsideration was timely filed, Askin's motion was automatically denied by operation of RHC rules on August 21, 1984, rather than on August 30, 1984, the date of the formal order denying his motion for reconsideration, and that the earlier date is the time to which we should look when we apply Rule 15(c). Again, under this formulation, Askin's petition would not be timely and we would lack jurisdiction. We will consider each argument in turn.

### A. *The Motion for Reconsideration*

■ The Commission's ruling against Askin was entered on July 13, 1984. RHC Rule 3320.1, 14 DCMR 3320.1 (1983), required that a party seeking reconsideration file in writing such a motion "within ten (10) days of the date of the decision." Excluding Saturdays, Sundays, and legal holidays, as provided in 14 DCMR 3313.1 (1983), the ten-day period expired on July

27, 1984. Askin did not file his motion until July 31, 1984.

However, as noted above, this order was not postmarked until July 19, 1984. The mailing of such a notice was required by 14 DCMR 3383.3 (1983), which read: "A copy of each decision shall be mailed to each party or the party's representative of record, and shall promptly be made available to the public." [10]

The issue here is whether the delay in mailing the notice of decision effectively extended the period within which Askin had to file his motion for reconsideration. We encountered a somewhat analogous situation in *Poyner v. Police and Firemen's Retirement and Relief Board,* 456 A.2d 1249 (D.C.1983). There we were faced with an interpretation of D.C.App.R. 15(c), which provided that the time for filing a petition for review after the denial of a motion for reconsideration was to be computed "from the date of the order denying said petition." The motion for reconsideration was denied on January 29, a Friday. However, the notice of the denial was not mailed until Monday, February 1. We said:

> Even if [petitioner] or his counsel had coincidentally happened to travel to the Board office on January 29, it is not clear from the record that he would have learned that his motion had been official-

269 (D.C.1976) (judicial review provision of prior act preserved by savings clause); *cf. Strand v. Frenkel,* 500 A.2d 1368, 1372 (D.C.1985); *Scholtz Partnership v. D.C. Rental Accommodations Commission,* 427 A.2d 905, 915 (D.C.1981). To do so would require the RHC to follow two sets of procedural rules where, as one can see in the case at bar, following one is confusing enough. *See also Hija Lee Yu v. District of Columbia Rental Housing Commission,* 505 A.2d 1310 (D.C.1986) (petitioner filed under 1980 Act, but sought application of 1977 Act rules; "when the 1977 Act expired, the old rules of the RAC became null and void").

9. Rule 15(b), as it then read, provided in part: Review of orders and decisions of an agency shall be obtained by filing with the Clerk of this Court a petition for review within 15 days from the date of having been given formal notice of the order or decision sought to be reviewed unless an applicable statute provides a different time for filing said petition. In the event the time limitation prescribed by statute

is less than 7 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation unless the statute expressly provides otherwise.
Rule 15(c) provided:
*Tolling of time for filing petition for review.* The running of the time for filing petition for review is terminated as to all parties by the timely filing pursuant to the rules of the agency of a petition for rehearing or reconsideration and the full time for filing the petition for review as fixed by subdivision (b) of this Rule commences to run and is to be computed from the date of the order denying said petition.

10. The RHC's rules themselves recognized the necessity of extra time when mailings are involved by promulgating Rule 3313.2, which provides: "If a party is required to serve papers within a prescribed period and does so by mail, three (3) days shall be added to the prescribed period to permit a reasonable time for mail delivery." 14 DCMR 3313.2 (1983).

ly denied as of that day, as the Board appears to have prescribed no formal procedure for release of decisions other than by letter. The most appropriate date for use, therefore, is February 1, when the decision was mailed by certified mail to [petitioner]. Recognition of January 29 as the decision date, as the Board proposes, charges the three days during which the decision remained entirely within the internal processes and control of the Board to the petitioner, and also diminishes any incentive for the Board to dispatch decisions promptly. Such untrammeled power to shorten a petitioner's time to appeal could arguably lead to increasingly dilatory mailing of orders.

456 A.2d at 1251.

The same reasoning, we believe, is applicable to the facts presented here. If the date of the Commission's decision is deemed to be July 19, 1984, the date of the mailing (as required by commission rule) to Askin, his motion for reconsideration was timely filed.[11]

### B. "Automatic" Denial v. Formal Order

The RHC's second argument is that even if the motion for reconsideration was timely filed, Askin did not timely file his petition for review to this court following its denial. The Commission points to its Rule 3320.6, 14 DCMR 3320.6 (1983), which states that "failure of the Commission to

act within [15 days of receipt of the motion for reconsideration] shall constitute a denial of the motion for reconsideration." Since Askin filed the motion on July 31, 1984, RHC concludes, that fifteen-day period expired on August 21, 1984, fifteen business days thereafter.[12]

D.C.App.R. 15(c), as it then read, provided that where a petition for reconsideration was timely filed with an agency, the "full time for filing a petition for review as fixed by subdivision (b) of this Rule [fifteen calendar days] commences to run and is to be computed from the date of the order denying said petition." The Commission argues that since the denial of the motion is deemed to have occurred on August 21, 1984, and Askin didn't file his appeal until September 12, 1984, this court lacks jurisdiction over the matter, citing *Totz v. District of Columbia Rental Housing Commission*, 474 A.2d 827, 828–29 (D.C.1984).[13]

 Askin, however, points out that in fact, the Commission, by a document dated August 30, 1984,[14] entered a formal order denying the petition. The document on its face is in all respects a formal order of the RHC, in no way implying that it is merely confirming any previous "automatic" denial of the petition. It bears the signatures of the two commissioners in the majority and of the third commissioner dissenting without opinion. It appears likely that Askin received a copy of this order on or

---

**11.** Given that July 19, 1984, is the proper date to calculate the time limit for appeal, petitioner avoids the problem presented in *Totz v. District of Columbia Rental Housing Commission*, 474 A.2d 827, 829 n. 5 (D.C.1984). In *Totz*, we noted that the petition for reconsideration, assuming it had been provided for and was timely under the Commission's rules, was filed after the fifteen calendar day limit of D.C.App.R. 15(b), thereby depriving us of jurisdiction.

**12.** 14 DCMR 3313.1 (1983) provides that:

In computing any period of time prescribed or allowed by these rules, only business days shall be counted. Saturdays, Sundays, and legal holidays are excluded, as is the day in which the designated period of time begins to run.

A plain reading of the regulations indicates that this provision applies to Rule 3320.6. Respondent implicitly concedes so in its brief.

**13.** *Totz*, however, does not directly apply to the case at bar. The rules of the RHC, at the relevant time in *Totz*, did not provide for motions for reconsideration. Hence, the tolling provision of D.C.App.R. 15(c) could not come into play and the time for appeal expired.

**14.** A sentence in the form itself reads: "The *Petition for Rehearing and Reconsideration* stands DENIED this ___ day of _____, 1984." The blanks are not filled in. However, at the top of the order there appears in handwriting the date 8/30/84. At oral argument, both parties said they did not know how the handwritten date got on the document. Askin asserts, however, that he relied upon that date as the date of the decision. Given that the RHC failed to fill the form out properly, the Commission cannot subsequently refuse to accept that date as the date of the decision.

before September 5, 1984,[15] which would be the time limit under our rules,[16] using the automatic denial date of August 21 as a starting point. We think that under these circumstances, where a formal order arrives before the period to appeal the "automatic denial" has expired, the later order should be held to be the "date of the order denying said petition" within the meaning of our Rule 15(c). Because the ambiguity created by such a situation can lead a party to rely upon the latter order as the date from which to appeal, the Commission cannot say that the prior date of the automatic denial controls our appellate jurisdiction.[17] In situations where ambiguity exists regarding the date of an order or decision, this court has resolved the ambiguity in favor of the party seeking review. Very recently, in *Donnelly Associates Limited Partnership v. District of Columbia Historic Preservation Review Board*, 520 A.2d 270 (D.C.1987), we confronted a situation where an oral decision by an administrative body was followed by later written notice of the decision. In holding the later notice to constitute "formal notice," we stated:

> If the decision is oral, there is no written recordation of its substance, and the los-

ing party may be uncertain whether the result and the reasons for it will be the same when the written decision comes down. We should, if possible, minimize guesses by the parties on which decision is the proper one to be appealed.

■ We likewise resolve the ambiguity, here created by the possibility that two "orders" exist denying the motion for reconsideration, by holding that the written order, at least when it arrives during the period when a petitioner can still appeal the "automatic denial", fixes the time for the appeal period to run. We have stressed the importance of removing ambiguity from the notice context in other areas of administrative law. *See, e.g., Ploufe v. D.C. Department of Employment Services*, 497 A.2d 464 (D.C.1985) (notice of ten-day time period to appeal must specify whether calendar or working days); *Bailey v. District of Columbia Department of Employment Services*, 499 A.2d 1223 (D.C. 1985) (language regarding petition for review inadequate as a matter of law, because it incorrectly suggested that reason might be given which would excuse untimely filing). Consequently, Askin's petition was timely filed.

**15.** The order was dated August 30, 1984, as previously discussed in note 14, *supra*. The exact date upon which Askin received the copy of the order by mail is uncertain; the envelope bore no postmark. In his petition for review, Askin states that he received the order on or about September 7, 1984. At oral argument, he stated that he received it in early September. August 30, 1984 was a Thursday. Presumably the order was mailed that day or the next, which meant that it would normally arrive no later than Tuesday, September 4. (September 3 was Labor Day, a holiday.) Under these circumstances, we proceed on the assumption that the order arrived within the 15–day period following the "automatic" denial. We thus do not reach the question whether a three-day "mailing period" should be added to the normal fifteen-day period under our Rule 12(c) in cases where a motion is "automatically" denied. Such a period was added for mail service under our Rule whenever an order denying reconsideration was entered outside of the presence of the parties. *Poyner, supra*, 456 A.2d at 1251. The reasoning would be, perhaps, that it is only after that three-day period in which no notice granting reconsideration is received that a party may be confident that there has been a "failure of the

Commission to act" upon the motion, which shall thus "constitute" its denial.

**16.** Since we are now calculating the time under Rule 15(c), the fifteen days are counted as calendar days pursuant to Rule 15(b), quoted, *supra*, note 9.

**17.** We do not deal here with a situation where the fifteen-day appeal time has already run at the time the formal order is entered nor with a situation where it can fairly be said that the formal order is simply a written confirmation of the previous automatic denial. Neither do we deal with any question of how and when appellant shall be deemed to have "notice" of the automatic denial, since the RAC could have acted favorably on the motion a day or two before the end of the fifteen-day period, with the formal order then en route in the mail. *See* note 15, *supra*. This is not necessarily to say that the provision automatically denying motions for reconsideration by inaction does not start the fifteen-day period running absent actual notice to a party. We have previously generally recognized the validity of such provisions. *See General Services Administration v. Public Service Commission of D.C.*, 469 A.2d 1238, 1240 (D.C.1983).

We conclude, therefore, that we have jurisdiction and now turn our attention to the merits of petitioner's appeal.

### III. *The Merits of the Appeal*

Petitioner Askin raises numerous issues in his appeal. The respondent's brief, however, is devoted solely to the jurisdictional point discussed in Part II, and virtually the entire oral argument before us was devoted to that issue alone. Respondent in its brief asks that if we rule against it on the jurisdictional point, we remand the matter to the Commission "so that the Commission can address Mr. Askin's contention that the dispositive issue in this matter was never properly before the Commission and for consideration of other issues raised but never addressed in the Commission's decision." We believe we should accede to this requested remand as an orderly next step to attempt to bring into full focus all relevant substantive issues on the merits.

Accordingly, the case is remanded for further proceedings consistent with this opinion.

*So ordered.*