**TENANTS OF 1255 NEW HAMPSHIRE AVENUE, N.W., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,**

and

**Hamilton House Limited Partnership, Intervenor.**

**No. 92–AA–765.**

District of Columbia Court of Appeals.

Argued March 16, 1994.

Decided Sept. 8, 1994.

---

Bennett L. Hecht, with whom Mark A. Sherman was on the brief, for petitioner.

John Payton, Corp. Counsel at the time of filing, and Charles L. Reischel, Deputy Corp. Counsel, filed a Statement in Lieu of Brief, for respondent.

Eric A. Von Salzen, with whom Michelle D. Falivena was on the brief, for intervenor.

Before TERRY, SCHWELB, and KING, Associate Judges.

SCHWELB, Associate Judge:

On February 8, 1990, the District of Columbia Rental Housing Commission held that Hamilton House Limited Partnership (HHLP), which operates the 304–unit Hamilton House apartment complex near Dupont Circle in northwest Washington, D.C., was

entitled to a substantial hardship rent increase pursuant to D.C.Code § 45–2522(a) (1992), but remanded the case to the Rent Administrator for additional findings with respect to certain issues. The parties subsequently stipulated to the facts to which the remand related and, on May 22, 1992, the Rent Administrator issued an order, based on the stipulations, which resolved the remanded issues. Petitioners, the tenants of the complex, have asked this court to review the Commission's 1990 decision, as implemented by the Rent Administrator's 1992 order.

The tenants contend that the Commission erroneously permitted HHLP, in calculating the return on its equity for purposes of its hardship petition, to treat as a deductible expense the interest paid by HHLP on a second mortgage loan from one Peter Sharp, a principal of HHLP who controlled HHLP's operations. According to the tenants, this loan was not negotiated at arm's length and resulted in a windfall for Mr. Sharp, who had borrowed the money on the same day at a substantially lower rate of interest.[1] The tenants also claim that the Commission committed reversible error by allowing HHLP to treat the property's parking garage and valet shop as residential rather than commercial properties, and to deduct expenses relating to those establishments in calculating the return on its equity.

HHLP contends that this court lacks jurisdiction to entertain the petition because, according to HHLP, the petition is untimely with respect to the Commission's 1990 decision and because the tenants appealed directly from the Rent Administrator's 1992 decision, without first filing an administrative appeal to the Commission. On the merits, HHLP maintains that the Commission decided the case correctly.

We decline, as did a motions division of this court,[2] to dismiss the petition on jurisdictional grounds. On the merits, we vacate the Commission's decision and remand for further proceedings.

## I.

## THE ADMINISTRATIVE PROCEEDINGS

### A. Factual Background.

At all times relevant to this controversy, Peter Sharp was the dominant partner of HHLP. The Rent Administrator found that Sharp "controls [HHLP's] operations." In its initial decision in this case,[3] the Commission referred to Sharp as a "housing provider who ma[de] a loan to his company and receive[d] a $376,359.00 profit." Although the Commission also described Sharp as "a principal" of HHLP, it evidently viewed him, for purposes of this case, as HHLP's "alter ego." *HHLP I*, at 5–6 and n. 1.

In February, 1986, HHLP purchased the property to which this controversy relates by borrowing $7,750,000.00 from a German bank at a favorable interest rate. Under the terms of the loan, Peter Sharp was personally liable in the event HHLP defaulted. In June, 1986, Sharp borrowed $11,400,000.00 from the same bank at 8.5% interest. He then immediately lent $7,500,000.00 of the borrowed money to HHLP at 12% interest, in order to enable HHLP to redeem the initial purchase money loan within a reasonable time. There was uncontradicted testimony before the Rent Administrator that, at the time of the transaction between Sharp and HHLP, the "going interest rate" was approximately 13%–14%.

### B. The Rent Administrator's Decision.

The wheels of justice have ground slowly in this case. More than seven years ago, on July 30, 1987, HHLP filed a hardship petition claiming that it was not receiving the 12%

---

**1.** The tenants did not challenge the deductibility of interest payments on the original purchase money loan, which was at a substantially lower rate.

**2.** See *Tenants of 1255 New Hampshire Ave., N.W. v. District of Columbia Rental Hous. Comm'n*, No. 92–AA–765 (D.C. Jan. 6, 1993). The motions

division's ruling is not binding on us. *District of Columbia v. Trustees of Amherst College*, 499 A.2d 918, 920 & n. 3 (D.C.1985).

**3.** *Tenants of 1255 New Hampshire Ave., N.W. v. Hamilton House Ltd. Partnership*, H.P. 20,388 (R.H.C. Nov. 2, 1989) (hereinafter *HHLP I*).

return on its equity to which it was entitled pursuant to D.C.Code § 45–2522(a). HHLP requested authority to increase the rent ceiling for the various units by 39%. The tenants opposed the petition on various grounds and, on April 1, 1988, following an evidentiary hearing, the Rent Administrator held that "[t]he rent ceilings for each rental unit ... may be increased by an amount which does not exceed 33.7% over the current rent ceilings." With respect to the specific issues with which we are now concerned, the Rent Administrator found that although the loan from Sharp to HHLP was not an arm's length transaction, the 12% rate was commercially reasonable. He further found that HHLP had proved that "the loan proceeds were applied towards the acquisition of the housing accommodation," and that the interest on the loan was therefore allowable as an expense under the Commission's then applicable standards. *See Tenants of 1323 Clifton St., N.W. v. Joseph Beavers,* H.P. 10,692 (R.H.C. July 22, 1987) ("a loan secured by a housing accommodation cannot be allowed as part of an expense in a hardship petition unless the landlord establishes by credible documentation that the proceeds were applied towards the acquisition ... of the housing accommodation"). Finally, the Rent Administrator ruled that the garage parking facility, the valet shop, and seven apartments which were then being rented to business tenants were not to be considered commercial enterprises, and that the income and expenses from these entities need not be excluded from the calculation of HHLP's hardship increase.

## C. The Commission's first decision— HHLP I.

Both parties appealed to the Rental Housing Commission, and on November 2, 1989, in *HHLP I,* the Commission reversed the Rent Administrator's order in part. The Commission held, on two separate grounds, that the interest on Sharp's loan to HHLP could not be deducted as an expense in calculating HHLP's return on its equity. First, the Commission concluded, contrary to the holding of the Rent Administrator, that the proceeds of the loan were not being used to benefit the property as required by the Com-

mission's decision in *Beavers*. Second, the Commission held that transactions between landlords and landlord-controlled entities require special scrutiny, and that the loan from Sharp could not withstand such scrutiny because it resulted in Sharp's receipt of a windfall at the tenants' expense. The Commission stated, in pertinent part:

> We do not disagree with the hearing examiner that 12% may well be a commercially reasonable rate. We do disagree with the hearing examiner that this transaction was a reasonable commercial transaction in real estate financing in light of the legislative purpose undergirding the hardship increase process.
>
> \*   \*   \*   \*   \*   \*
>
> Mr. Sharp received a loan in the amount of $11,400,000.00 on June 30, 198[6], and on that same day, he made a $7,500,000.00 loan to Hamilton House Limited Partnership to pay off the first mortgage. This paper transaction was designed to create a $376,359.00 windfall to Mr. Sharp. We conclude that the $11,400,000.00 loan to Mr. Sharp from the BHF bank was not for the sole purpose of acquiring the building. Another factor raised is the issue of the arm's length transaction. In this case, this was a voluntary transaction by the housing provider. [It was a] loan from the principal of the housing accommodation to the housing provider. The housing provider had complete control over this transaction and it cannot be attributed to a hardship. We cannot agree that a housing provider who makes a loan to his company and receives a $376,359.00 profit can turn to the hardship petition and receive a subsidy from the tenants for the profit.

*HHLP I,* at 3, 5.

Turning to other issues raised by the tenants, the Commission held that the garage and valet shop in the apartment complex were commercial enterprises and that the Rent Administrator had erroneously allowed the deduction of expenses relating to these enterprises in calculating HHLP's rate of return. Finally, the Commission remanded the case to the Rent Administrator for appropriate findings relating to the use of sev-

en apartments during the relevant time period.

### D. The Commission's second decision—HHLP II.

On November 26, 1989, less than three weeks after the Commission's decision in *HHLP I*, this court decided *J. Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43 (D.C.1989). We held in *Parreco* that the hardship petition statute, which permits the landlord to deduct, among other things

> the amount of interest paid during a reporting period on a mortgage or deed of trust on a housing accommodation[,]

D.C.Code § 45–2503(18) (1992); *Parreco*, 567 A.2d at 45, did not restrict the availability of this deduction to loans of which the proceeds were reinvested in the property or used for the benefit of the tenants. On February 8, 1990, in *HHLP II*,[4] the Commission, invoking what it described as its "authority to *sua sponte* correct or modify any error in its decisions" (citing, *inter alia*, *Bookman v. United States*, 197 Ct.Cl. 108, 453 F.2d 1263 (1972)), held that certain of its holdings in *HHLP I* were "clear error" in light of *Parreco*. *HHLP II*, at 4–5. With respect to the second mortgage loan from Sharp, the Commission now held (as *Parreco* plainly required it to hold) that

> where in its prior decision the Commission stated that the loan transaction which was the basis for the interest payments, "did not benefit the tenants," and that its proceeds were "not applied to the maintenance or improvement of the housing accommodation," it was in error. *Parreco* does not permit us to place such qualifications on the deductibility of interest payments. The Court refused to read into the statute the requirement that proceeds from a loan must be reinvested in a property.

*HHLP II*, at 7–8.

The Commission then went on to apply the holding of *Parreco* to an issue not presented in that case, namely, the legal effect of

Sharp's dominant status in HHLP and the lack of arm's length dealing in the transaction between the lender and borrower:

> [T]his Commission's decision was also based upon an additional finding that the subject transaction was not [at] arm's length. This was based upon the fact that the maker of the subject loan, Peter Sharp, is also a principal in the partnership that owns the housing accommodation. Based on the *Parreco* analysis, however, this consideration also appears to be an inappropriate basis for disallowing the interest payment deduction.

> \*     \*     \*     \*     \*     \*

> The fact that Peter Sharp is both the maker of the loan, and as such, the recipient of a total of $942,917.00 in annual interest payments from the housing provider, Hamilton House Ltd. Partnership, as well as a principal in that same partnership, which likely enjoys tax benefits as the result of these interest payments, and which will also benefit if the deduction of the additional interest in this matter results in the approval of the hardship petition, is of no small concern to this Commission. This Commission, however, absent a showing of impropriety, and there has been none, is obligated to follow the dictates of the *Parreco* case.

*HHLP II*, at 8–9.

Completing its turnabout, the Commission also reversed its decision in *HHLP I* with respect to the parking garage and valet shop, and now held that these facilities provided services to the tenants and that HHLP's expenses with respect to them were allowable. The Commission adhered to its remand to the Rent Administrator of the issues relating to the seven apartments which were then being leased to business enterprises.

### E. Events Since the Remand.

Following the Commission's decision in *HHLP II*, the parties stipulated that the seven apartments to which the remand relat-

---

**4.** *Tenants of 1255 New Hampshire Ave., N.W. v. Hamilton House Ltd. Partnership*, H.P. 20,388 (R.H.C. Feb. 8, 1990) (hereinafter *HHLP II* ).

ed had been in residential use at the times relevant to HHLP's hardship petition, and that in light of the Commission's rulings in *HHLP II*, the landlord was entitled to an increase of 35.73% in the rent ceiling. On May 22, 1992, the Rent Administrator issued a decision on remand in conformity with these stipulations. The tenants did not appeal to the Commission from this uncontested order, but on June 25, 1992, they petitioned this court to review the Commission's decision of February 8, 1990, presumably as effectuated by the Rent Administrator's order of May 22, 1992.

## II.

### LEGAL DISCUSSION

*A. Jurisdiction.*

Apparently almost as an afterthought following its vigorous briefing of the merits,[5] HHLP insists that this court lacks jurisdiction over the tenants' petition for review. Its attack on our jurisdiction is double-barreled. If the petition, which was filed on June 25, 1992, is viewed as seeking review solely of the Commission's February 10, 1990, decision in *HHLP II*, then, according to HHLP, it was untimely, for it was filed more than two years after the tenants' receipt of that decision. *See* D.C.App.R. 15(a). HHLP points out that, as this court noted in *Totz v. District of Columbia Rental Hous. Comm'n*, 474 A.2d 827, 829 (D.C.1984), "[o]nce the time prescribed by the rule has passed, we are without power to hear the case." If, on the other hand, the petition is viewed as seeking review of the Rent Administrator's decision of May 22, 1992, then, according to HHLP, this court lacks authority to entertain it because that decision was not first appealed to the Commission. *See C Street Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 552 A.2d 524, 525 (D.C.1989).

▮ We do not agree with these contentions. The substantive rulings which the tenants have asked this court to review are those contained in the Commission's decision in *HHLP II* with regard to the deduction of interest payments on the loan from Peter Sharp and the expenses relating to the garage and valet shop. These are rulings as to which the tenants were plainly entitled to judicial review at some time. *See, e.g., Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 397–98 (D.C. 1991) (holding that in all but exceptional cases in which the legislature has unequivocally so provided, an individual is entitled as a matter of right to judicial review of a final order of an administrative agency).

No such review was available to the tenants in 1990, however, for at that time the Commission had not entered a final order,[6] nor had it disposed of all of the issues presented to it in HHLP's hardship petition. On the contrary, in *HHLP II*, the Commission had adhered to its prior remand of the case to the Rent Administrator for further findings as to the seven apartments then occupied by business enterprises. The precise hardship increase in the rent ceiling to which the landlord would be entitled in conformity with *HHLP II* was yet to be determined.

"Ordinarily, an order remanding the case to an administrative agency is not a final order." *Warner v. District of Columbia Dep't of Employment Servs.*, 587 A.2d 1091, 1093 (D.C.1991); *see also Brandywine Ltd. Partnership v. District of Columbia Rental Hous. Comm'n*, 631 A.2d 415, 416–17 (D.C. 1993) (per curiam). If the tenants had petitioned this court in 1990 to review the Commission's decision in *HHLP II*, they would undoubtedly have encountered a successful motion to dismiss the petition upon the ground that the agency's decision was not a

---

**5.** Although HHLP has focused on the merits before advancing its jurisdictional contentions, we address the jurisdictional issues first. We do so because, if a court is without subject matter jurisdiction over the controversy (as HHLP argues here), it should so hold and dismiss the proceeding, without attempting to resolve the substantive questions presented. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818,

108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); *In re Plummer*, 608 A.2d 741, 749 n. 1 (D.C.1992) (Schwelb, J., concurring).

**6.** The District's Administrative Procedure Act provides a right to judicial review only of final agency orders. *See* D.C.Code §§ 1–1502(11), –1510 (1992).

final one; for the court to have entertained the petition at that time would have undercut the firm judicial policy against piecemeal appellate litigation. *See, e.g., Hercules & Co., Ltd. v. Shama Restaurant Corp.,* 566 A.2d 31, 36 (D.C.1989). But if judicial review was not available in 1990, because meaningful proceedings on remand were yet to follow, then the tenants' entitlement to such review ripened in May 1992, when the Rent Administrator issued his decision on remand.

■ HHLP's contention that we lack jurisdiction because the tenants did not exhaust their administrative remedies by appealing to the Commission from the Rent Administrator's May 1992 order is equally unavailing. When the Commission, in *HHLP II,* adhered to its prior remand of limited issues to the Rent Administrator, it had already resolved all of the other questions in the case. Subsequently, the remanded issues were resolved by stipulation. There was no adverse ruling by the Rent Administrator from which the tenants could appeal to the Commission, and a second administrative appeal of the issues previously resolved in *HHLP II* would have been altogether futile. *See Randolph–Sheppard Vendors of America v. Weinberger,* 254 U.S.App.D.C. 45, 59–61, 795 F.2d 90, 104–06 (1986). We are not disposed to deny parties their day in court for failure to jump through futile procedural hoops. *See, e.g., In re Melton,* 597 A.2d 892, 907–08 (D.C.1991) (en banc). "[T]he law does not require the doing of a futile act." *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980), *quoted in Stack v. United States,* 519 A.2d 147, 156 (D.C.1986).

Once the proceedings before the Rent Administrator had been completed, the parties were in agreement that the Rent Administrator's stipulated findings could be incorporated into the Commission's decision. "[N]othing more than a ministerial act remain[ed] to be done." *District of Columbia v. Tschudin,* 390 A.2d 986, 988 (D.C.1978) (quoting *Republic Natural Gas Co. v. Oklahoma,* 334 U.S. 62, 68, 68 S.Ct. 972, 976, 92 L.Ed. 1212 (1948)). Although a stipulation or comparable submission incorporating the Rent Administrator's decision might perhaps have been presented to the Commission to formalize the incorporation of the Rent Administrator's decision on remand into the Commission's final order, we do not believe that the tenants' failure to take this formal step (in an extraordinary and apparently unprecedented situation) warrants forfeiture of their right to judicial review.[7]

*B. Mortgage Interest Expenses.*

■ Insofar as the Commission's initial decision in *HHLP I* rested on the notion that interest on Sharp's loan to HHLP could not be included in the landlord's hardship petition because HHLP had not shown that the proceeds were being reinvested in the property or utilized for the benefit of the tenants, that holding could not survive our decision in *Parreco.* We declined in that case to read a reinvestment requirement into a statute which did not contain one, and we alluded to the legislature's authority to remedy any actual or perceived unfairness or to correct our literal interpretation of the statute if a different construction was intended. *Parreco,* 567 A.2d at 49–50. We therefore have no quarrel with the Commission's decision in *HHLP II* to vacate so much of *HHLP I* as rested on the notion that interest on a loan was a deductible expense only if the proceeds of the loan were reinvested in the property.

■ In *HHLP II,* however, the Commission also invoked *Parreco* as a basis for invalidating the second ground for the Commission's earlier disapproval of the deduction of the interest on Sharp's loan to HHLP, namely, the lack of arm's length negotiations, which had allegedly resulted in a windfall for Peter Sharp, an insider who controlled the very entity with which he was contracting. In *HHLP I,* as we have noted, the Commission adhered to prior holdings requiring it to scrutinize with care "insider" transactions of the kind at issue here. The Commission's approach to such transactions is consistent with our own; this court, too, has declined to exalt form over substance and, in appropriate

---

7. *See Barnett v. District of Columbia Dep't of Employment Servs.,* 491 A.2d 1156, 1163–64 (D.C.1985); *id.* at 1164 (Terry, J., concurring).

cases, has disregarded corporate formalities and focused on practical realities. *See, e.g., Christacos v. Blackie's House of Beef, Inc.,* 583 A.2d 191, 196 (D.C.1990). Indeed, we have stated that "[c]ourts deal with the substance, rather than the form of transactions, and will not permit important legislative policies to be defeated by artifices affecting legal title but not the practical consequences of the existing situation." *EDM & Assocs., Inc. v. GEM Cellular,* 597 A.2d 384, 388 (D.C.1991) (footnote omitted) (quoting *United States v. Beach Assocs., Inc.,* 286 F.Supp. 801, 807 (D.Md.1968).

Although the facts in *Parreco* were complex, the legal issue was a comparatively straightforward one; should a "reinvestment into the property" requirement be judicially read into a statute which made no mention of it. *Parreco* did not involve insider dealings or alleged windfalls based on such dealings. We could not and did not provide *carte blanche* in *Parreco* for all kinds of transactions which were not then before us. Rather, we decided the issue presented in that case, and no more.

We recently had occasion to observe in *Mims v. Mims,* 635 A.2d 320, 325 n. 12 (D.C.1993), that

8. In *Khiem,* 612 A.2d at 164, we stated:
In *Kraft v. Kraft,* 155 A.2d 910 (D.C.1959), the court pointed out that:
It is well to remember that significance is given to broad and general statements of the law only by comparing the facts from which they arise with those facts to which they supposedly apply.
155 A.2d at 913. *See also Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944), where the Supreme Court aptly stated:
It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the order under discussion. *To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court.* General expressions transposed to other facts are often misleading.
(Emphasis added in *Khiem.*)

9. HHLP argues that the interest on the Sharp mortgage challenge loan must be deductible because the deed of trust securing that loan was "on" the property. *See Parreco, supra,* 567 A.2d at 45. The point of the tenants' submission,

[c]ourts do not, or at least should not, issue generalized edicts, nor should they promulgate statute-like rules of law applicable to all future cases, regardless of their facts. Rather, they decide concrete controversies. We do not purport in this opinion to instruct trial judges how to rule on facts substantially different from those here. *See, e.g. Khiem v. United States,* 612 A.2d 160, 164 (D.C.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).[8]

Similarly, in *Parreco,* we did not purport to instruct agencies how to rule on facts and issues significantly different from those presented in that case.[9]

To recapitulate, our decision in *Parreco* nullified one of the two grounds upon which the Commission resolved the mortgage loan interest issue in its decision in *HHLP I.* We did not address the second ground, and we therefore cannot agree with the Commission's conclusion in *HHLP II* that *Parreco* rejected it. Accordingly, we must vacate the decision in *HHLP II* and remand the case for further proceedings. On remand, in what may become *HHLP III,* the Commission will have to reconsider this issue in conformity with our decision in *Parreco* and our explication in this opinion of the limits of that decision.[10]

however, is that but for a self-serving "insider" transaction engineered by the individual who controlled HHLP in order to obtain a windfall, the 12% loan would not have been "on" the property, and HHLP would not have been paying 12% interest. *Cf. Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 232–33, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959) ("no man may take advantage of his own wrong").

10. Although we ordinarily accord great weight to an agency's construction of a statute which it administers, *see, e.g., Parreco, supra,* 567 A.2d at 48 (citations omitted), there is no basis, in reason or precedent, to defer to the Commission's construction of *a decision of this court*—here *Parreco.* Indeed, the writer of this opinion was also the author of *Parreco;* the two divisions, however, had no other common members.

Lest our opinion be misunderstood, we express no independent view as to whether, as the tenants suggest, the transaction between Sharp and HHLP was a "sham" from which Sharp reaped a "windfall." If, as the Commission conceded in *HHLP I,* the rate of interest on Sharp's loan was commercially reasonable, it may be that Sharp could have gained a like profit by lending the

*C. The Parking Garage and the Valet Shop.*

The remaining issues for our consideration relate to the parking garage and the valet shop. The Rent Administrator ruled that neither facility should be treated as a commercial enterprise for purposes of the landlord's hardship petition. The Commission initially reversed the administrator's decision as to both facilities in *HHLP I*, but then reversed itself with respect to each of them in *HHLP II* and reinstated the Rent Administrator's determination. The tenants maintain that the Commission had it right the first time. We find no error.

*(1) The parking garage.*

■ The garage facility at Hamilton House was leased to Peter Sharp & Co., which paid rent to HHLP. Residents were charged a fee for space in the garage. Applying the dictionary definition of "commercial" as "occupied with or engaged in commerce, or work intended for commerce, or viewed with regard to profit," the Commission concluded in *HHLP I* that the parking garage was a "commercial establishment." Because, according to the Commission in *HHLP I*, at 6,

> [t]he law precludes commercial rent and expenses from being included in a hardship petition,

(citing *Tenants of 4115 Wisconsin Ave., N.W. v. Avenue Ltd. Partnership*, H.P. 10,431 (R.H.C. July 6, 1984)), the Commission initially concluded that the expenses from the parking garage should have been excluded.

In *HHLP II*, however, the Commission relied on statutory provisions which were not cited or considered in *HHLP I*. Specifically, D.C.Code § 45–2503(23) provides as follows:

> "Other income which is derived from the housing accommodation" means any income, other than rents, which a housing provider earns because of his or her interest in a housing accommodation, including, but not limited to, fees, commissions, income from vending machines, income from laundry facilities, and *income from parking* and recreational *facilities*.

(Emphasis added). A housing accommodation's "other income" as defined above must be included in the calculation of the housing accommodation's total income. D.C.Code § 45–2522(b)(1). The Commission thus concluded in *HHLP II:*

> Accordingly, we are compelled by the statute to treat the garage space, which we have previously held to be commercial, as if it were residential for the purpose of calculating the rate of return on equity.

*HHLP II*, at 12–13 n. 6.

We agree with the Commission that if the income from the parking garage must be considered, then its expenses also belong in the hardship petition calculus. *Cf. Parreco, supra*, 567 A.2d at 47 & n. 6. As to the parking garage, the Commission's decision in *HHLP II* is not "plainly erroneous or inconsistent with the statute," *see Parreco*, 567 A.2d at 48 (citation omitted), and we therefore sustain it. Indeed, the dispositive statutory language was not considered at all in *HHLP I*, and it is that decision which is "inconsistent with the statute" insofar as the parking facility is concerned.

*(2) The valet shop.*

■ In *HHLP II;* the Commission held that

> the valet shop was given space rent-free and no income was produced for the partnership. The valet shop is a service to the tenants, it is not commercial space. We therefore reverse our prior decision and hold that its expenses are properly allowable to the partnership.

*HHLP II* at 13. Thus, although the valet shop was undoubtedly a commercial "for profit" enterprise, it was not the landlord's enterprise, and it earned no income for the landlord. Rather, use of the space provided a benefit to the tenants by making the shop's services available to them on the premises.

Under these circumstances, the Commission reasonably concluded in *HHLP II* that the valet shop was not the kind of commer-

money to somebody else or by investing it differently. We emphasize, however, that our decision in *Parreco* had nothing to say on these issues and

that it is the Commission which must resolve them, subject of course to further judicial review by this court.

cial facility as to which interest payments are non-deductible for purposes of a hardship petition. The agency's ultimate decision, in any event, was not plainly erroneous or inconsistent with the statute. *Parreco,* 567 A.2d at 48.

The tenants complain that the Commission has insufficiently explicated why it changed its mind. "[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute." *Greater Boston Television Corp. v. FCC,* 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971) (footnotes omitted). We conclude, however, that the Commission succinctly but sufficiently identified the key considerations for its decision as to the valet shop, namely, that the shop provided no income for the landlord but that it did benefit the tenants. Accordingly, we discern no basis for reversal.[11]

### III.

### CONCLUSION

For the foregoing reasons, the decision of the Commission in *HHLP II* is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*[12]

---

11. We note that the definition of "other income" in D.C.Code § 45–2503(23) includes any income which the housing provider earns from "laundry facilities." Since the valet shop generated no income for the housing provider, we need not address the question whether it was a "laundry facility."

12. We recognize that, despite the age of this case, our disposition has not achieved finality. Nevertheless, we believe that the issue which we have remanded to the Commission should be initially decided by that agency in conformity with the applicable legal principles. Under the circumstances, though, this case ought, on remand, to be placed on as fast a track as reasonably possible.